553 F.2d 1078
 5 O.S.H. Cas.(BNA) 1315, 1977-1978 O.S.H.D. ( 21,780
 PENN-DIXIE STEEL CORP. (formerly Continental Steel
Corporation), Petitioner,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and John T.
Dunlop, Secretary of Labor, Respondents.
 No. 75-1819.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 12, 1976.
Decided April 29, 1977.
 
 Ronald Clay Bennett, Joseph E. O'Leary, Chicago, Ill., George Preonas, Los Angeles, Cal., for petitioner.
 Nancy L. Southard, U. S. Dept. of Labor, Washington, D. C., for respondents.
 
 
 1
 Before FAIRCHILD, Chief Judge, BAUER, Circuit Judge, and CAMPBELL, Senior District Judge.*
 
 
 2
 WILLIAM J. CAMPBELL, Senior District Judge.
 
 
 3
 Penn-Dixie Steel Corp. (Penn-Dixie) petitions this court to review an order of the Occupational Safety and Health Review Commission affirming a penalty assessed by the Secretary of Labor (Secretary) under the Occupational Safety and Health Act of 1970 (OSHA). 29 U.S.C. § 651 et seq.
 
 
 4
 The record indicates that Penn-Dixie is a large corporation which makes steel and steel products at its Kokomo, Indiana plant. On April 19, 1973, respondent Secretary made a physical inspection of the Penn-Dixie facility in Kokomo. This inspection included noise level readings in the Melt Shop Charging Floor Area, the Barbed Wire Area and the Nail Mill. In all three of these areas, the noise levels exceeded the amounts allowed in Table G-16 of 29 CFR 1910.95.
 
 
 5
 As a result of this inspection, on May 7, 1973, the Secretary cited Penn-Dixie for one serious and two nonserious violations.** Specifically, the Secretary charged Penn-Dixie with failure to comply with the standards relating to employee protection against noise exposure, failure to implement feasible engineering and administrative controls to reduce noise levels, and failure to ventilate adequately its galvanizing operation. The Secretary served Penn-Dixie with proposed penalties of $600, $150, and $150 for each respective violation, and established the dates on which the violations were to be abated.
 
 
 6
 In a cover letter transmitting the citations and proposed penalties, the Secretary advised Penn-Dixie that it had the right to contest the citations, proposed penalties, or both before the Occupational Safety and Health Review Commission. The transmittal letter then stated the following:
 
 
 7
 "If you do contest, you must so notify the Area Director within 15 working days after receipt of the certified mail notice regarding proposed penalties. If you fail to contest within 15 working day period, the citation and proposed assessment of penalties shall be deemed to be a final order not subject to review by any court or agency."
 
 
 8
 The concluding paragraph of a document entitled "Notification of Proposed Penalty," states as follows in relevant part:
 
 
 9
 ". . . (The) Citations, this Notification, and the proposed assessment shall be deemed to be the final order . . . and not subject to review by any court or agency, unless, within 15 working days from the date of receipt of this notice, you notify the official named below in writing that you intend to contest the Citation or this Notification of Proposed Penalty before the Review Commission. . . ." (Emphasis in original).
 
 
 10
 The above quoted paragraphs advised the employer of his rights under 29 U.S.C. § 659(a).
 
 
 11
 The record indicates that Penn-Dixie Vice President Downing wrote to the Area Director on May 22, 1973, requesting an extension of the date by which several of the alleged violations were to be corrected. The Area Director complied with this request by issuing amended citations reflecting the extended abatement dates sought by Penn-Dixie.
 
 
 12
 The record further shows that on May 29, 1973, Penn-Dixie's manager of employee relations Shively, on behalf of Downing, sent a letter to the Area Director. The first sentence of the letter indicates Penn-Dixie's protest of the penalties assessed as a result of the inspection. The letter then details Penn-Dixie's position with respect to the cited violations, and concludes that "the penalty assessed appears to be for our failure to do what no one else has been able to do so far."
 
 
 13
 The Secretary interpreted this letter as a contest only of the proposed penalties, and not of the underlying citations. To confirm this interpretation, the Secretary's regional attorney telephoned Shively and asked if Penn-Dixie only meant to contest the proposed penalties. He received an answer to the effect that Penn-Dixie's contest was in reference to the amount of the penalties.
 
 
 14
 Pursuant to 29 U.S.C. § 659(c), the Secretary transmitted the contest to the Occupational Safety and Health Review Commission (Commission), and filed a formal complaint alleging that the contest was limited to certain penalties, that the penalties were proper, and that the citations underlying the penalties had become final by operation of law. Penn-Dixie, through Downing, timely filed an answer to the complaint in the form of a letter addressed to the Commission. The letter denied the allegations of the three violations in issue here, and attacked the propriety of the proposed penalties, but did not deny the allegation that the underlying violations were not before the Commission. Thereafter, Penn-Dixie, through counsel, filed an Amended Answer contesting both the penalties proposed and the underlying citations.
 
 
 15
 The Secretary moved to strike the Amended Answer on the grounds that the Commission was without jurisdiction to adjudicate the underlying violations because Penn-Dixie's notice of contest was limited to the proposed penalties. The Administrative Law Judge, finding the intent of the May 29, 1973 Shively letter of protest sufficiently ambiguous to support an inference that the citations, as well as the penalties, were contested, denied the motion to strike.
 
 
 16
 At the hearing held on December 4, 1973, the Secretary introduced evidence supporting the proposed penalties. With respect to the violations which formed the basis for the citations, the Secretary introduced no evidence establishing an affirmative case regarding the availability of feasible engineering controls. Rather, the Secretary indicated to the Administrative Law Judge that he intended to "stand on the point that the contest was directed to the penalty, not to the citation. . . ." At the hearing, the Secretary called Shively as a witness and the following colloquy took place:
 
 
 17
 Q. Now, with reference to the first of these letters, letter dated May 29, 1973, do you recall that after submitting that, and within the fifteen working day period for contest that I called the Respondent on the phone and spoke to you?
 
 
 18
 A. Yes, I recall that.
 
 
 19
 Q. And at that time did I ask you whether or not the Respondent intended to contest the citation, or whether or not they contested only the Notification of Proposed Penalty, and that your response was that the contest was in reference to "just the amount of penalty?"
 
 
 20
 (An objection was overruled).
 
 
 21
 Q. Do you recall the question?
 
 
 22
 A. Yes.
 
 
 23
 Q. What is the Answer?
 
 
 24
 A. Yes, I recall telling you that.
 
 
 25
 The Administrative Law Judge found that the testimony of Shively conclusively resolved against Penn-Dixie any ambiguity found in the letter of protest. The judge then held that he had no jurisdiction to rule on the question of the violations since Penn-Dixie had failed to contest that issue. Having affirmed the citations and abatement dates, the Administrative Law Judge then vacated the $600 serious violation penalty in light of Penn-Dixie's good faith efforts to follow Department of Labor bulletins, and affirmed the $150 penalties for the non-serious violations relating to noise controls and ventilation.
 
 
 26
 On review, the Commission adopted and affirmed the Administrative Law Judge's decision that the notice of contest was directed only to the proposed penalties. The Commission then vacated a non-serious $150 penalty and assessed at $1 penalty for the serious violation.
 
 
 27
 On appeal to this Court, Penn-Dixie seeks reversal of the order of the Commission on the grounds that the Commission's findings, conclusions and final order violate its right to a trial by jury as guaranteed by the Seventh Amendment of the Constitution. Penn-Dixie also contends a reversal is required because the Commission's findings, conclusions and order are not supported by substantial evidence in the record. Alternatively, Penn-Dixie seeks a remand of the case to the Commission for reconsideration on the basis of the Commission's decision in Turnbull Millwork Co., OSHRC Number 7413. For the reasons stated below, we remand the case to the Commission for reconsideration.
 
 
 28
 We ordered the decision in this case to be held in abeyance pending the decision of the Supreme Court in Atlas Roofing Co. v. OSHRC, --- U.S. ----, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977). In Atlas, the Supreme Court was squarely faced with the identical Seventh Amendment issue raised by petitioner here, and held that the Seventh Amendment does not bar Congress from assigning to an administrative agency the task of adjudicating OSHA violations, --- U.S. at ----, 97 S.Ct. 1261. In light of Atlas, we reject petitioner's contentions that the Commission's procedures violate its Seventh Amendment rights.
 
 
 29
 Under 29 U.S.C. § 659(a) and the regulations promulgated by the Secretary thereunder, employers are provided the means for a review of these citations and proposed penalties. In relevant part, that statute provides that "the employer has fifteen working days within which to notify the Secretary that he wishes to contest the citation or proposed assessment of penalty." 29 U.S.C. § 659(a). Under 29 CFR § 1903.17, the cited employer is informed that "(e) very notice of intention to contest shall specify whether it is directed to the citation or to the proposed penalty or both." Failure to contest either the citation or proposed penalty within the designated time renders the citation and the assessment the final order of the Commission which is not subject to review by any court or agency. 29 U.S.C. § 659(a).
 
 
 30
 This statutory review scheme has been construed to mandate a distinction between a contest of a citation and a contest of a proposed penalty. Brennan v. Occupational Safety and Health Review Commission (Bill Echols Trucking Co.), 487 F.2d 230 (5th Cir. 1973). See also: Dan. J. Sheehan Co. v. Occupational Safety and Health Review Commission, 520 F.2d 1036 (5th Cir. 1975), cert. denied, 424 U.S. 965, 96 S.Ct. 1458, 47 L.Ed.2d 731.
 
 
 31
 After the Commission reviewed the instant case, including the Administrative Law Judge's determination that only the proposed penalties and not the citations were properly before it, the Commission changed the rule expressed in Florida East Coast Properties, Inc., 6 OSHRC 404 (1974) with respect to notices of contest under 29 U.S.C. § 659(a). In Turnbull Millwork Co., supra, the Commission recognized that the previous rule placed employers, who often appear without counsel, in the position of making technical judgments, under time pressure, which affects their right to a hearing on the merits. In liberalizing the previous rule, the Commission stated:
 
 
 32
 (W)e believe it is necessary in cases like the instant one, to look at the pleadings subsequent to the notice of contest in order to determine the respondent's true intent. . . . (W)e will construe notices of contest that are limited to only the penalty to also include a contest of the citation, if a respondent indicates at a later time that it was its intent to also contest the citation.
 
 
 33
 Turnbull Millwork Co., supra, 3 CCH OSHD P 20,221, at 24086. Furthermore, the rule of Turnbull applies whether the employer is represented by counsel or proceeds pro se. Nielsen Smith Roofing & Sheet Metal Co., OSHRC Docket No. 16142.
 
 
 34
 In the instant case, we give little weight to Shively's testimony to the effect that Penn-Dixie only intended to contest the proposed penalties. We think this testimony lacks the substantiality required to support the Commission's finding that Penn-Dixie intended only to contest the proposed penalties. We note that at the time of the telephone call to Shively from the Secretary's attorney, Penn-Dixie was not represented by counsel. No showing was made at the hearing that Shively understood at the time of the telephone conversation the distinction between a notice of contest of proposed penalty and a notice of contest of citation, nor was there any showing that Shively knew the effect of his answer on subsequent proceedings. Under the circumstances of this case, were we to view his testimony as "conclusive" on the issue of Penn-Dixie's intent, we would be compelled to assume that this uncounseled layman understood the subtle, formalized distinctions expressed in 29 CFR § 1903.17. Such an assumption we decline to make.
 
 
 35
 Rather, our reading of the May 29, 1973 letter convinces us that Penn-Dixie intended to contest both the proposed penalties and the underlying citations. Although the letter indicates a contest of penalties, it does so with respect to the citations, disputing the conclusions reached by the Secretary and complaining that the proposed penalties appear to be for failure "to do what no one else has been able to do so far". Reading the letter as a whole, we are satisfied that it sufficiently gave notice to the Secretary that both the proposed penalties and the citations were to be contested.
 
 
 36
 Inasmuch as the Secretary presented no evidence at the hearing on the citations, we feel that a remand of this case to the Commission for reconsideration is appropriate.
 
 
 37
 REVERSED and REMANDED.
 
 
 
 *
 Senior District Judge William J. Campbell of the United States District Court for the Northern District of Illinois, is sitting by designation
 
 
 **
 Penn-Dixie was also cited for 45 other non-serious violations, none of which is before this court